# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| **Kang Sik Park, M.D.**  Plaintiff,  v.  **First American Title Insurance Company**  Defendant. | **MEMORANDUM DECISION AND ORDER**  Case No. 2:17-CV-280-DAK |

This matter comes before the court on Defendant First American Title Insurance Company's ("First American") Motion to Dismiss claims brought by Plaintiff Kang Sik Park, M.D. ("Park") for being time barred, for prior material breach, and for failure to state a claim on which relief can be granted.

The court held a hearing on the motions on July 6, 2017. At the hearing, Robert Mansfield and Christopher Feuz represented Park; Mark Morris represented First American. The court took the motion under advisement. Having carefully considered the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

First American is a Nebraska corporation doing business in Salt Lake County. It issued a title insurance policy ("the Policy") to Park, an individual residing in Salt Lake County, after Park provided Peter and Virginia Lamb with a private loan. The Lambs secured the loan by naming Park as the beneficiary of a deed of trust to their ownership interest in two different parcels of land. Park purchased the Policy through First American to insure his interest in the parcels. In August 2010, Park and the Lambs were named, among others, as defendants in a

Quiet Title Action challenging their interest in one of the parcels. Park answered the Quiet Title Action in February 2011 and otherwise handled the case *pro se*.

Park met with First American in December 2013 to discuss the litigation. At that time, the individual he met with initiated a claim ("the Claim") under Park's policy. First American did not respond to the Claim.

In October 2015, the Third Judicial District Court, Salt Lake County, held a hearing on the Quiet Title Action. In December 2015, Judge Bernards-Goodman concluded that the Lambs', and thus Park's, interest in the property was invalid. At some unspecified point in the factual history of this case, the Lambs defaulted on the loan. Because he had received no response from First American regarding his claim, Park filed the Complaint that initiated this litigation.

Park's Complaint alleges four causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) an alternative claim for breach of implied-in-fact contract; and (4) an alternative claim for unjust enrichment, quasi contract, and/or contract implied in law.

First American's Motion to Dismiss asserts that all of Park's claims are time barred. Next it argues that Park breached his contractual duties under the Policy first, which released First American of its obligations under the first breach doctrine. Finally, First American argues that Park's claims fail as a matter of law.

## DISCUSSION

Ample case law states that if an insurance contract fails to provide a choice of law provision, a federal court sitting in diversity will apply the law of the forum state. *Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc.*, 390 F.3d 684, 687 (10th Cir. 2004). The court therefore allows Utah law to govern this dispute.

First American asks the court to dismiss all of Park's claims for being time barred. It cites to Utah Code § 31A-21-313(1)(a), which states that actions against insurers regarding an insurance policy must be brought within three years after the "inception of the loss." Utah Code Ann. § 31A-21-313 (West).

Park argues that he suffered no loss until December 2015 when he lost the Quiet Title Action. He points to § 8 of the Policy, which states that, in the event of litigation, First American has no liability until a court of competent jurisdiction has issued a final judgement. According to Park, § 8 tolled the statute of limitations until the time for appeal in the Quiet Title Action had passed. Therefore, Park concludes that his "inception of loss" did not occur until January 2016, which was the deadline to appeal the Quiet Title Action's final judgement. The court disagrees.

*Inception of Loss*

The "inception of loss" language used in the Utah Code has not been precisely defined through case law in the context of title insurance. The various cases cited by both Park and First American all agree that the inception of loss arises the moment the loss is first incurred or begins to accrue, but differ in identifying what event counts as a loss.

First American relies heavily on *Canadian Indem. Co. v. K & T, Inc.*, which defines the "inception of loss" as beginning from "the first moment that the loss was incurred, not from the moment of the alleged notification to the insured that the insurer would not comply with the terms of the contract." 745 F. Supp. 661, 664 (D. Utah 1990), aff'd, 953 F.2d 1391 (10th Cir. 1992). The plaintiff in *Canadian Indemnity* sued its insurance company for failure to defend litigation in which the plaintiffs had previously been named as defendants. *Id.* The court held that the loss occurred when the plaintiff first accrued defense costs in that litigation. *Id.*

In *Anderson v. Beneficial Fire & Casualty Co.,* the plaintiff sued his insurance agency for failing to pay his claim after plaintiff's property was stolen. 21 Utah 2d 173, 174 (1968). The Utah Supreme Court affirmed the lower court's ruling that the inception of the loss occurred when the property was stolen. *Id.*

Conversely, in *Tucker v. State Farm Mut. Auto. Ins. Co.*, plaintiffs sued their automobile insurance agency for breach of contract when the agency denied a second claim to recover additional personal injury protection benefits related to a previous claim the insurance company had paid. 2002 UT 54, ¶ 15. The Utah Supreme Court affirmed the lower court's ruling that that the limitations period began when the insurer denied the insured's claim. *Id.*

*Canadian Indemnity* and *Anderson* are easily consistent: in *Canadian Indemnity*, the cause of action was a breach of the failure to defend, and the inception of loss occurred when the plaintiff accrued defense costs; in *Anderson*, the cause of action was a failure to pay a property claim, and the inception of the loss occurred when the property was discovered to be stolen.

*Tucker* seems to directly contradict *Canadian Indemnity* because the *Tucker* court ruled that the inception of loss occurred when the insurance company denied the *Tucker* plaintiffs' claim. However, the key difference is that the *Canadian Indemnity* case involved one insurance claim while the *Tucker* case involved two claims.

The original claim the *Tucker* plaintiffs made on their automobile insurance policy arose out of an automobile accident. The accident was likely the inception of loss for that initial insurance claim. When the plaintiffs filed another claim to procure additional personal injury benefits, they did not suffer the loss for that additional claim until the claim was actually denied. Once the insurance company denied the additional claim, the plaintiffs suffered a new loss separate from the loss that occurred when they were involved in the automobile accident. Thus,

the limitations period for a lawsuit based on that second claim started to run the day the insurance company denied it.

Park is suing First American because it failed to pay Park's Claim for the loss of his title. Title insurance is unique from automobile or property insurance in that it protects the insured's interest in, not only a valid title, but also in a clean title. Once the insured gets named in a quiet title action, the title is no longer clean. So Park suffered a loss the moment he was served with the Quiet Title Action: the loss of his clean title. Because the Quiet Tile Action was the inception of his loss, the limitations period began to run as soon as Park became aware of the pending action. Therefore, the very latest he could have filed suit against First American was February 2014—three years after Park answered the Quiet Title Action.

*Policy § 8 and Tolling*

The court agrees with First American that § 8 of the Policy does not define a loss. Under the Policy, First American has two options if the insured faces litigation: it can either pay out the policy (Dkt. 14 at Ex. A, Policy § 6) or take over the insured's defense (Dkt. 14 at Ex. A, Policy § 4). If First American chooses to defend the insured in the event of litigation, rather than also having to pay out the Policy if the insured makes a claim during that litigation, § 8 allows First American to wait until the litigation is completely over before having to answer the claim.

Section 8 does not attempt to exclude litigation from the definition of a loss; rather it allows First American to be able to work all the way through litigation and attempt to receive a favorable outcome before it is required to pay out the Policy. Thus, § 8 does not preclude the interpretation that the inception of Park's loss occurred when he was served with the Quiet Title Action.

The court concludes that Park's claims are time barred. The issue of the timeliness of Park's claims is dispositive to First American's Motion to Dismiss and renders unnecessary the analysis of any remaining arguments.

## CONCLUSION

Defendant's Motion to Dismiss is GRANTED and this case is dismissed for containing time-barred claims.

DATED this 12th day of July, 2017

_____
DALE A. KIMBALL
United States District Judge